**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Van Kirk, et al., | No. CV-20-01961-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Local 469 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs and Defendants' competing Motions for Summary Judgment ("MSJs").  (*See* Doc. 73 (Defendants' Monition for Summary Judgement, hereafter, "DMSJ"); Doc. 92 (Plaintiffs Amended Motion for Summary Judgment, hereafter, "PMSJ")).  Both motions are fully briefed, including competing factual statements.  (*See* Docs. 74; 75; 88; 95; 94; 95; 96; 97; 102; 103.)  Also pending before the Court are Plaintiffs' Motion to Strike, (Doc. 91), and Motion to Supplement, (Doc. 104.  Both those motions are, likewise, fully briefed.  (*See* Docs. 93; 101; 105; 106.)  The Court held oral argument for all the above motions on June 1, 2022.  After considering the parties' arguments and briefing, as well as the relevant caselaw, the Court will grant in part and deny in part the DMSJ and PMSJ, and deny in whole Plaintiffs' Motion to Strike and Motion to Supplement for the reasons explained below.

## I.    BACKGROUND

Plaintiffs Michael Van Kirk, Gary Bailey, and Michael Kersztyn are union members

in good standing with United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Local 469 ("Local 469").  Local 469 is a labor organization subject to Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, and the Labor Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 410 *et seq*.  Defendant Aaron Butler is, and at all relevant times has been, the Business Manager of Local 469.  Plaintiffs allege that Local 469 and Defendant Butler violated the LMRDA (Claim One) and Local 469 Bylaw 9.12 (Claim Two)—both of which allow union members access to certain union documents—and they further allege that Defendant Butler violated his fiduciary duty under 29 U.S.C. § 501 and the common law (Claim Four).[1]

Plaintiffs' claims arise from their requests—pursuant to 29 U.S.C. § 431 and Local 469 Bylaw § 9.12—to access certain union records, which began in February of 2018.  At that time, Plaintiffs' requested access because of "concerns that there had been malfeasance or misfeasance in the handling of Local 469's assets."  (Doc. 92 at 4.)  These concerns were spurred by the marked decline in Local 469's assets as reported in its annual financial report ("LM-2s").  Specifically, Local 469 lost roughly $7,000,000—almost half of its assets—in the first two and a half years of Defendant Butler's stint as Business Manager, which began on May 16, 2014. (Doc. 1 at 4, 8.) These concerns were apparently worsened when Local 469's Financial Secretary-Treasurer circulated a letter which provided that he was "happy to report that the financial state of Local 469 is as solid as it has ever been in its history."  (Doc. 92 at 6.)

Since that time, there has been a continuous back-and-forth between Plaintiffs' and Defendants, wherein Plaintiffs have demanded access to certain categories of documents, and Defendants have produced what they believe to be the necessary documents, but Plaintiffs have been—and remain—unsatisfied with the documents produced.  According to Plaintiffs, Defendants' failure to produce the requested documents was the impetus for

---

[1] Plaintiffs' alleged retaliation claim (Claim Three) was earlier dismissed by this Court. (Doc. 34.)

this lawsuit.  After the suit was filed, Defendants produced even more documents. However, Plaintiffs allege that Defendants have not produced all the documents that 29 U.S.C. § 431 and Local 469 Bylaw § 9.12 require them to produce.  Consequently, Plaintiffs claim that there are entitled to declaratory and injunctive relief, providing them access to the documents and finding that Defendant Butler breached his fiduciary duty.

The parties' cross-motions for summary judgment have brought clarity as to what categories of documents are currently disputed.  The list of disputed categories is now limited to the following:

1. Local 469 PAC-related documents (to whatever extent, if any, Defendants have not categorically waived any bases for refusing access to these documents by producing the PAC [Political Action Committee] budget);

2. Individual itemized receipts for charges to Local 469 credit cards during Defendant Aaron Butler's tenure as the Local's Business Manager/CEO;

3. Plaintiffs' request for reasonable access to data stored on Local 469's QuickBooks software; and

4. Communications between Local 469 and governmental agencies regarding concerns about possible malfeasance or misfeasance in the handling of the Local [469]'s assets.

(Doc. 96 at 3; *see also* Doc. 103 at 1–2) (citations omitted).

However, the factual waters are muddied by the parties' continued disputes about what document the Court should consider when ruling on their competing MSJs.  (*See generally* Docs. 91; 93; 101; 105; 104; 106.)  Consequently, the Court will first address Plaintiffs' Motion to Strike and Motion to Amend.  Then, with the factual record clarified, the Court will consider the parties' competing MSJs.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A material fact is any factual issue that might affect the outcome of the case under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  The court need only consider the cited materials, but it may also consider any other materials in the record.  *Id.* at 56(c)(3).  Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  If the movant fails to carry its initial burden, the non-movant need not produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact.  *Id.* at 1103.

The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Liberty Lobby*, 477 U.S. at 247–48.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (internal citations omitted).  However, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and

construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).   If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

## III.   DISCUSSION

### A. Evidentiary Motions

Plaintiffs' Motion to Strike, (Doc. 91), and Motion to Supplement, (Doc. 104), both have the potential to alter what evidence the Court may consider when ruling on the parties' competing MSJs.   Thus, the Court will address these two motions first.

#### i.   Motion to Strike

Plaintiffs allege that Defendants failed to disclose certain documents—which Rule 26 required them to disclose—that are now included in Defendants' MSJ. (Doc. 91 at 1–2.)   Consequently, Plaintiffs seek to have those exhibits struck from Defendants' Statements of Facts in Support of their MSJ ("DSOF"). (*Id.*)  Additionally, Plaintiffs ask the Court to strike "all statements in [the DSOF] and arguments set forth in [the DMSJ] that rely, directly or indirectly, in whole or in part, upon" the undisclosed documents. (*Id.*)

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires that parties file: "[A] copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Rule 26 also imposes a duty on a party to timely "supplement or correct its disclosure or response" if that party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) serves as an enforcement mechanism for Rules 26(a) and (e).  It provides:

If a party fails to provide information or identify a witness as required by

> Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "As the Rule plainly states, litigants can escape the "harshness" of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Id.* However, "[t]he automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)"; rather, "Rule 37(c)(1) authorizes appropriate sanctions '[i]n addition to or instead of [exclusion].'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

Thus, the Court must first determine if—as Plaintiffs allege—Defendants failed to disclose document required by Rule 26. If so, the Court must next determine whether that violation was substantially justified or harmless. If it was unjustified or harmful, the court must determine what sanctions are appropriate under Rule 37.

Here, Defendants listed the following three categories of documents as ones that it might use to support its claims or defenses:

- Written requests including email made on or behalf of the Plaintiffs . . . to inspect financial records.
- Written requests including email . . . to obtain copies of financial records.
- All documents provided to Plaintiffs since January 1, 2018.

(Doc. 91 at 21.) Plaintiffs argue that Defendants violated Rule 26 by (1) failing to identify the "location" of the listed categories of documents; (2) including certain exhibits that are not encompassed by the above three categories; and (3) failing to reference certain exhibits in Defendants' MSJ.[2] (Doc. 91 at 3–15.) Defendants respond that Plaintiffs' argument

---

[2] Plaintiffs also hint at a potential discovery dispute—specifically, alleged deficiencies in Defendants' Response to Plaintiffs' written discovery. (*See* Doc. 91 at 4–5.) However, to the extent Plaintiffs make such an argument, it is untimely, and Plaintiffs do not argue that

turns on a "cramped" reading or Rule 26's use of the phrase "or a description by category and location," and that all the disputed exhibits fall within the categories of documents disclosed by Defendants.  (Doc. 93 at 2.)

The Court has evaluated the purportedly violative documents and will deny Plaintiffs' Motion to Strike as moot.  Plaintiffs' proposed sanction is removal of the documents, and their correlating facts, from consideration by the Court for the purposes of ruling on Defendants' MSJ.  However, the disputed documents—along with the facts they bolster in Defendants' MSJ—are not necessary for the Court to resolve the competing MSJs.  Because the Court can rule on the MSJs without the contested documents, whether they documents should be struck is a moot point.  Moreover, Plaintiffs do not seek additional sanctions, and Defendants have not proposed alternative sanctions.  Therefore, the Court's resolution—on whether there was a violation of Rule 26—would not change the outcome of this order or otherwise affect the parties.[3]  Therefore, the Court will deny Plaintiffs' Motion to Strike as moot.

### ii. Motion to Supplement

Plaintiffs seek to add four documents for the Court to consider when it rules on the parties competing MSJs: (1) Plaintiffs' Requests for Production of Documents ("RFPs"); (2) Defendants' initial Response to Plaintiffs' RFPs; (3) Defendants' amended Response to Plaintiffs' RFPs; and (4) a November 8, 2021 letter sent by Plaintiffs' Counsel regarding discovery disputes.  (Doc. 104.)  Defendants counter that these documents are irrelevant to the issue they purportedly attempt to resolve—whether Plaintiffs' July 8, 2021 request to review Local 469's QuickBooks was made in bad faith and outside is the scope of the Complaint.  (Doc. 15 at 2.)  To bolster this argument, Defendants highlight the fact that all the documents that Plaintiffs wish to supplement originated after Plaintiffs' July 8, 2021

---

this is an extraordinary circumstance; thus, the Court will not address it.  (*See* Doc. 39 at 3 ("Absent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery.")).

[3] Because the Court denies Plaintiffs' Motion to Strike as moot, it also denies Plaintiffs' requests for attorney's fees contained in the Motion.

1   QuickBooks request.  (*Id.*)

2        The Court agrees that the documents are not relevant to answering whether the

3   QuickBooks data is within the scope of this litigation.  Plaintiffs argue that the QuickBooks

4   data has been within the scope of this litigation since its inception—pointing to language

5   in the Complaint and the Joint Case Management Report ("JCMR") to back this assertion.

6   (Doc. 104 at 3.)  But the documents Plaintiffs now seek to admit do not bolster that

7   argument.  Indeed, the proposed supplemental documents post-date Plaintiffs' first request

8   to view the QuickBooks data, which was itself made after the filing of the Complaint and

9   the JCMR.  The Court fails to see how documents post-dating an allegedly belated request

10  somehow demonstrate that the belated request was not belated but was in fact contemplated

11  since the inception of the litigation.

12       Because the Court finds that the proposed supplemental documents are irrelevant, it

13  will deny Plaintiffs' Motion to Supplement.

14          **B.  Summary Judgment Motions**

15       Each party has moved for summary judgment on all remaining claims.  (*See*

16  Docs. 73; 92.)  The Court will take each claim in order.

17              i.  Claim One—Violation of the LMRDA

18       Plaintiffs allege that Defendants violated the LMRDA by refusing to provide

19  Plaintiffs with access to certain requested documents.  (Doc. 1 at 40.)  As Defendants

20  acknowledge, Local 469 is subject to the LMRDA and is, therefore, required to file an

21  annual LM-2 report with the Department of Labor.  29 U.S.C. § 431(b).  Consequently,

22  Local 469 must "make available the information required to be contained in [its LM-2]

23  report to all of its members" and also must "permit such member *for just cause* to examine

24  any books, records, and accounts necessary to verify [its LM-2] report."  29 U.S.C. § 431(c)

25  (emphasis added).  Put differently, the LMRDA imposes two significant limitations on a

26  union member seeking to inspect union documents: (1) the union member must have "just

27  cause," and (2) the documents sought must be the type of records that are necessary to

28  verify the union's LM-2 report.  *See id.*

Defendants argue that Plaintiffs either seek the wrong type of documents, lack just cause for their request, or both.  (*See* Doc. 73 at 9–13.)  Plaintiffs argue that Defendants have either waived[4] the just-cause requirement or, alternatively, that Plaintiffs have met the just-cause requirement.  (Doc. 96 at 4–9.)  The Court agrees that Plaintiffs have demonstrated just cause, but it does not agree that they have a right to access every category of document requested.

As an initial matter, Plaintiffs have demonstrated just cause.  "The standard for determining whether there was just cause is necessarily minimal."  *Morley*, 378 F.2d at 744.  Indeed, to demonstrate just cause, Plaintiffs do not have to satisfy the reasonable doubt standard, or the preponderance of the evidence standard, or even a reasonable person standard.  *Id.*  Instead, the relevant inquiry is whether "a reasonable union member would be put to further inquiry."  *Id.* (emphasis added).  Here, the Court finds that the loss of nearly half of Local 469's assets within the first few years of Defendant Butler's management would certainly put a reasonable union member to further inquiry.  *See id.* (finding that a loan amounting to more than half of the unions assets, which did not comply with statutory reporting requirements, constituted just cause for union member inquiry).  Thus, Plaintiffs' have satisfied the just-cause requirement.

Having established just cause, the remaining issue is whether the categories of documents sought by Plaintiffs are within the scope of the LMRDA.  Under that statute, Plaintiffs seeks access to (1) individualized credit card receipts, (2) PAC records, and (3)

---

[4] Plaintiffs make two waiver arguments: (1) that Defendants' ten-month delay in responding to Plaintiffs' request for documents constitutes waiver of the just-cause requirement, and (2) that Defendants have also waived all other defenses to producing the requested documents.  (Doc. 106 at 3–4.).  Because the Court finds that just cause exists here, it need not address the first arguments.  The Court will also not address the second argument because Plaintiffs have provided no caselaw to support the proposition.  Indeed, the cases cited by Plaintiffs only provide grounds for the waiver of the just-cause requirement, not all other possible defenses.  *See, e.g.*, *Fruit & Vegetable Packers & Warehousemen Loc. 760 v. Morley*, 378 F.2d 738, 744 (9th Cir. 1967) (concluding that the union's conduct—ignoring a demand to inspect documents—effectively waived the "right the union had to be forewarned of the *just cause* for inspection" (emphasis added)).  Thus, the Court is not persuaded that Defendants have waived their other defenses.

Local 469's QuickBooks data.[5]  Each will be taken in turn.

### 1.  Itemized Credit Card Receipts

Plaintiffs request itemized credit card receipts from the entirety of Defendant Butler's tenure as the Local 469's Business Manager.  (Doc. 96 at 3.)  Defendants respond that they have already produced the un-itemized receipts and that, if Plaintiffs inform Defendants which itemized receipts they would like, Defendants will produce those receipts.  (Doc. 94 at 13.)  However, Defendants refuse to produce the itemized receipts *en masse* because, they claim, it would be overly burdensome.  (*Id.*)  The Court agrees with Plaintiffs that Defendants must produce the itemized receipts, but it agrees with Defendants that the scope of their request must be limited.

Plaintiffs have a right to inspect and copy all relevant itemized receipts.  Multiple circuit courts have affirmed "a union member's right to inspect and photocopy receipts and other union records necessary to verify the accuracy of the union's financial statements filed with the Secretary of Labor as required by § 431."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993) (collecting cases); *see also Conley v. United Steelworkers of Am., Loc. Union No. 1014*, 549 F.2d 1122, 1124 (7th Cir. 1977) ("A finding that [§] 431(c) includes the right to copy is also consistent with the development of the case law construing this section.").

However, Plaintiffs are not entitled to all the receipts they have requested.  The Court is mindful of two limitations that the LMRDA places on requests to inspect union documents: (1) the requests may not be used as a harassment tool, *Morley*, 378 F.2d at 743 ("[I]t seems clear that Congress designed the just cause requirement to prevent continuous and undue harassment."); and (2) the documents sought must be "necessary" to verify the LM-2 report, 29 U.S.C. § 431(c).

---

[5] At oral argument, Plaintiffs clarified that they are not seeking access to Local 469's communication with government agencies under the LMRDA.  Instead, they seek that category of documents only under Local 469's Bylaw § 9.12.  Thus, the Court will not address Defendants' argument about whether the LMRDA requires disclosure of non-financial documents because the remaining categories of documents are all financial in nature.

Here, Plaintiffs are attempting to verify an LM-2 report that they claim they became aware of "in late 2017." (Doc. 1 at 8.) That LM-2 report showed that Local 469's assets had significantly diminished in the roughly two-and-a-half years of Defendant Butlers tenure, which began on May 16, 2014. (*Id.* at 4, 8.) This financial decline served as the impetus for Plaintiffs' request for investigations and inspections of union record. (*See id.* at 8–34.) Thus, the documents necessary to verify the LM-2 report are those from 2017 and before—the year that Plaintiffs became aware of the LM-2 report that they are now attempting to verify. However, Plaintiffs seek itemized receipts from the entirety of Defendant Butler's tenure, which is still ongoing. This request is far broader than necessary to verify the LM-2 report. The only purpose it may serve is harassment of Local 469 and Defendant Butler, which is prohibited. Consequently, the Court will limit the scope of Plaintiffs' request.

Therefore, the Court will grant summary judgment for Plaintiffs on their request for itemized receipts but will limit the relevant time frame to May 16, 2014—the start of Defendant Butler's service as Business Manager—through the end of 2017.

### 2. PAC Records

Local 469 maintains a PAC for the purpose of influencing elections, as permitted by Arizona and federal law. (*See* Doc. 94 at 6–7.) Under federal law, a PAC can be created by establishing a "separate segregated fund." 52 U.S.C. § 30101 (4)(B) (citing 52 U.S.C. § 30118(B)). Arizona election law also requires that funds established by labor organizations—such as Local 469's PAC funds here—register as a PAC. A.R.S. § 16-905(F). Both federal and state law provide reporting requirements for PACs. *See* 52 U.S.C. § 30104; A.R.S § 16-926. Thus, under federal and state law, PACs are separate from the entities that sponsor them. Despite this legal separation, Plaintiffs seek to force Local 469 to disclose its PAC related documents.

The Ninth Circuit has provided a three-part test for determining whether a separate legal entity constitutes a "subsidiary" of a labor organization, such that the labor organization may be required to disclose a subsidiary's financial documents under the

LMRDA. *Brennan v. Loc. Union 10, Int'l Longshoremen's & Warehousemen's Union (Ind)*, 527 F.2d 588, 589 (9th Cir. 1975).   Under that test, there are three necessary conditions for finding that a separate organization is a "subsidiary" of the labor organization: "(1) Ownership must be wholly vested in the labor organization, its officers, or membership; (2) it must be governed or controlled by the officers, employees or members of the labor organization; and (3) it must be wholly financed by the labor organization." *Id.*

Here, it is undisputed that Local 469 does not finance its PAC.  Instead, the PAC is wholly financed by voluntary contributions from Local 469 members.  Thus, Plaintiffs have not established all the elements necessary to show that the PAC is a subsidiary organization whose documents are subject to disclosure under the LMRDA.  *See id.* ("This third condition does not say wholly financed by the labor organization, or its officers, employees, or members.  Financing must be by the labor organization alone." (quotation marks omitted)).

Moreover, the Court is unpersuaded by Plaintiffs' reliance on the Secretary of Labor's guidance for filling out an LM-2, which provides that "[a]ll labor organization political action committee (PAC) funds are considered to be labor organization funds." (Doc. 97-1 at 87.)  First, the *Brennan* Court created the above three-part test to gap-fill the definition of "subsidiary organization," which was lacking in the LMRDA, by relying on the language contained on the LM-2 form at the time.  *Brennan*, 527 F.2d at 589.  Thus, Court can confidently rely on the Ninth Circuit's test—created from the language of the LM-2—without the considering the Secretary of Labor's guidance on filling out the LM-2 form.

Second, the Secretary's guidance does not conflict with the Court's conclusion; it buttresses it.  The very next line of the Secretary's guidance provides as follows: "However, to avoid duplicate reporting, PAC funds that are kept separate from your labor organization's treasury are not required to be included in your organizations Form LM-2 if publicly available reports on the PAC funds are filed with a Federal or state agency." (Doc.

97-1 at 87.)  Here, it is undisputed that Defendants' PAC funds are kept separate and reports on those funds are publicly available through the Arizona Secretary of State's website. (*See* Doc. 73 at 8.)  Thus, they are not required to be reported on Defendants' LM-2 and, consequently, Plaintiffs do not need PAC documents to verify the LM-2 report.[6]  Because they are not "necessary" to verify Defendants' LM-2 report, the PAC documents are not within the scope of the LMRDA.

Therefore, the Court will grant summary judgment for Defendants on this issue.

### 3.  *QuickBooks Data*

Defendants contend that Plaintiffs' request to review Local 469's QuickBooks data was made in bad faith and is outside the scope of the Complaint.  (Doc. 103 at 13.) Alternatively, Defendants argue that Plaintiffs have failed to show that they are entitled to QuickBooks data under the LMRDA.  (*See* Doc. 94 at 17.)  Plaintiffs contend that are entitled to QuickBooks data under the LMRDA, (Doc. 102. at 10–11), and that the data is properly within the scope of this litigation, (*see generally* Doc. 104).

First, the Court finds that the QuickBooks data is not within the scope of the litigation.  As Defendants highlight, both the Complaint, (Doc. 1), and the JCMR, (Doc. 38), do not mention QuickBooks data as a disputed category of documents, or otherwise mention QuickBooks.  Moreover, on July 7, 2021—one day before the Plaintiffs were set to inspect records on site at Local 496, and well after the inception of this litigation— Plaintiffs' counsel sent a letter summarizing what documents would be available for review.  (Doc. 103 at 13.)  Nowhere in that letter did Plaintiffs' counsel mention QuickBooks data.  (*Id.*)  Yet, at the July 8 meeting, Plaintiffs sought, for the first time, to review QuickBooks data.

Plaintiffs only counter to these facts is that the Complaint and JCMR both contain broad language that allows them to expand the scope of the documents requested.  (Doc. 104 at 3.)  Specifically, the Complaint—in its request for relief—seeks "access the

---

[6] To the extent Plaintiffs claim impropriety with the PAC's finances, (*see* Doc. 96 at 6–7), the vehicle to redress that claim is to file a complaint with the regulatory bodies, *see* 52 U.S.C. § 30109(a)(1); A.R.S § 16-938(A), not to file federal suit under the LMRDA.

documents they have requested, *along with similar documents they or other members of LOCAL 469 may in the future request* for the same or similar purposes pursuant to LMRDA § 431(c)." (Doc. 1 at 41 ¶ 102) (emphasis added).  The JCMR requests that the Defendants "make available the records Plaintiffs have sought, [and] refrain from denying or obstructing reasonable access to similar records in the future sought for similar purposes." (Doc. 38 at 3–4.)

These broad catch-all provisions are inconsistent with the LMRDA, which does not allow unending attempts to find some imagined malfeasance, but allows inquiries based on just cause only so far as they are necessary to verify a unions LM-2 report.  29 U.S.C. § 431(c); *see also Mallick v. Int'l Bhd. of Elec. Workers*, 749 F.2d 771, 783 (D.C. Cir. 1984) ("[P]olitical opposition to union officials, unaccompanied by any specific concern with transactions summarized on the LM–2 report, does not constitute just cause for rummaging through all the union records." (citing *Flaherty v. Warehousemen, Garage & Serv. Station Emp. Loc. Union No. 334*, 574 F.2d 484 (9th Cir. 1978))); *Conley v. United Steelworkers of Am., Loc. Union No. 1014*, 549 F.2d 1122, 1125 (7th Cir. 1977) ("Section 431(c) is obviously not intended to allow the harassment of union officials.").  Plaintiffs may entitled to certain documents that they requested, but they are not entitled to continuously expand the list of requested documents and prolong this litigation.  Thus, the Court finds that the QuickBooks data is not within the scope of this litigation.

Second, even if the QuickBooks data were within the scope of this litigation, the Court finds that Plaintiffs are not entitled to the data under the LMRDA.  Defendants point to *Behr v. Fortier*, No. CIV 06-3577 MJD/AJB, 2008 WL 2323884 (D. Minn. June 2, 2008), for the proposition that a local union member who has had access to all the documents underlying the relevant QuickBooks data is not also entitled to the QuickBooks data itself.  (Doc. 103 at 10.)  Plaintiffs, however, insist that *Behr* is inapposite here because, in that case, there was testimony from the union's bookkeeper that she did not add or change information from the hard copies when entering data in QuickBooks, and the hard copies were "readily available" to the requesting party.  (Doc. 102 at 10–11 (quoting

*Behr*, 2008 WL 2323884, at 8*)).  Plaintiffs contend that such testimony is not present here and, thus, the Court should grant them summary judgement regarding the QuickBooks data.

The Court is unpersuaded by Plaintiffs' argument because it is a reversal of the burden under the LMRDA.  As an initial matter, the only disputed category of documents that Plaintiffs are owed access to but have not yet received is the itemized receipts, which will change with the issuance of this order.  They have, however, had access to the un-itemized receipts and, thereby, had access to the information underlying the QuickBooks data.  More to the point, the burden is on Plaintiffs to show that the documents they seek are necessary to verify the LM-2 report.  *See Morley*, 378 F.2d at 742 ("[W]e can rely upon the general rule that the burden is upon the person seeking to enforce a right to show that all of the prerequisites and conditions precedent have been met.").  Thus, to rely on the absence of testimony about the hard-copy data being input to QuickBooks—in order to seek summary judgment in Plaintiffs' favor—constitutes a reversal of the burden that is Plaintiffs' to carry.  The Court is unpersuaded by Plaintiffs' distinguishing of *Behr* and holds, as that court did, that Plaintiffs are not entitled to the QuickBooks data.

Therefore, the Court will grant summary judgment for Defendants on this issue.

### ii.   Claim Two—Breach of Local 469's Bylaws

Plaintiffs next allege that Defendants violated the Local 469 Constitution and Bylaws and seek enforcement of Bylaw § 9.12 under 29 U.S.C. § 185.  (Doc. 1 at 42.) Bylaw § 9.12 provides as follows:

> The books of the Local Union shall be open for inspection at any time to members of the Local Union, in good standing, upon written request to the Business Manager.

(Doc. 107-1 at 9.)  Plaintiffs specifically allege that Defendants' refusal to provide access to the requested categories of documents was in bad faith and constitutes a breach of Bylaw § 9.12.  (Doc. 1 at 42.)  To bolster this allegation, Plaintiffs argue for an expansive reading of "books of the Local Union," which would include any and all records that are within Local 469's possession.  (Doc. 96 at 11.)   Defendants argue that Defendant Butler

reasonably interpreted Bylaw § 9.12, which they contend does not require disclosure of the requested categories of documents.  (Doc. 73 at 13.)  For their part, Defendants contend that "books of the Local Union" should be read much narrower than Plaintiffs suggest.

It is true that "[a] union constitution is a contract between labor organizations" and, "[a]s such, in an action brought under 29 U.S.C. § 185 it may be enforced like any other contract." *Loc. 1052 of United Bhd. of Carpenters & Joiners of Am. v. Los Angeles Cnty. Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir. 1991).  However, "[t]he Supreme Court has repeatedly recognized" that there is a "longstanding federal labor policy of avoiding unnecessary interference in internal union affairs."  *Fin. Inst. Emps. of Am., Loc. No. 1182, Chartered By United Food & Com. Workers Int'l Union, AFL-CIO v. N.L.R.B.*, 752 F.2d 356, 362 (9th Cir. 1984) (collecting cases).  Indeed, the Ninth Circuit has opined that it is "self-evident that the interpretation of a union's own constitution represents virtually the ultimate in internal affairs, and the impropriety of permitting critical examination, by . . . outsiders must be considered offensive."  *N.L.R.B. v. Electra-Food Mach., Inc.*, 621 F.2d 956, 958 (9th Cir. 1980).

Consequently, "[a]n interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference by a reviewing court and should not be overruled unless the court finds that the interpretation was unreasonable or made in bad faith."  *Monzillo v. Biller*, 735 F.2d 1456, 1458 (D.C. Cir. 1984); *see also Busch v. Givens*, 627 F.2d 978, 980 (9th Cir. 1980) ("When the Union officials have offered a reasonable construction of the constitution, and no bad faith on their part has been shown, the courts should not disturb the Union officials' interpretation." (quoting *Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379, 1389 (9th Cir. 1978))); *Motion Picture & Videotape Eds. Guild, Loc. 776, I.A.T.S.E. v. Int'l Sound Technicians, Cinetechnicians & Television Engineers of Motion Picture & Television Indus., Loc. 695*, 800 F.2d 973, 975 (9th Cir. 1986) ("[A]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the

union's rules and regulations, should not be disturbed by the court.").[7]

Defendants contend that Defendant Butler relied on counsel to interpret Bylaw § 9.12 and acted on counsel's guidance.  According to Defendants, Defendant Butler "interpreted [Bylaw §] 9.12 by applying the plain meaning of its language, giving due consideration to general membership rights to understand and review Local 469's financial affairs." (Doc. 73 at 14.)  He thusly construed Bylaw § 9.12's phrase "books of the Local Union" to provide "members the right to inspect all financial records relating to Local 469's assets, that is, the General Fund, the Market Recovery Fund and the Death Fund." (*Id.*)  Moreover, he interpreted the phrase "open for inspection at any time" to mean that members have "a right to inspect, but not copy, the 'books.'"  (*Id.* at 15.)

Plaintiffs respond that Defendant Butler's interpretation is actually an "amendment," and, alternatively, they offer another plausible definition of the phrase "books of the Local Union." (Doc. 96 at 10–12.)  Neither argument is persuasive.  First, Plaintiffs cite no caselaw for the proposition—and the Court is not aware of any case suggesting—that a narrow interpretation of its Bylaws constitutes an amendment by Defendants.  Second, providing another plausible and reasonable interpretation is not the same as showing that Defendants' interpretation is unreasonable.  Plaintiffs would have the Court interpret "books of the Local Union" the same as the "corporate books," which includes "[w]ritten record of a corporations' activities and business transactions."  (Doc. 96 at 11 (quoting *Corporate Books*, Black's Law Dictionary (11th ed. 2019)).)  While this is one possible interpretation, it is by no means the only reasonable interpretation.  Consequently, Plaintiffs have failed to show that Defendants' interpretation of Bylaw § 9.12 is unreasonable.

Given the deference owed to a union's interpretation of its own bylaws, *N.L.R.B.*, 621 F.2d at 958, the Court cannot conclude that Defendant Butler violated Bylaw § 9.12. Therefore, the Court will grant summary judgment for Defendants on Claim Two.

---

[7] As they conceded at oral argument, Plaintiffs do not allege bad faith.

iii.  <u>Claim Four—Breach of Fiduciary Duty Under 29 U.S.C. § 501 and Common Law</u>

Under Section 501 of the LMRDA, "officers of labor unions are held to the highest standards of responsibility and ethical conduct in administering the affairs of the unions." *Service Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 718 F.3d. 1036, 1044 (9th Cir. 2013) (citing 29 U.S.C. § 501).  "Congress intended this section to apply to fiduciary responsibilities of union officials, agents, and representatives, in any area of their authority."  *Stelling v. Int'l Bhd. of Elec. Workers Loc. Union No. 1547*, 587 F.2d 1379, 1387 (9th Cir. 1978).  Consequently, Section 501 "serves as a means for courts to intervene in union affairs when a fiduciary breach occurs when union officials fail to comply with the union constitution." *Id.* at 1389.

Here, Plaintiffs argue "only that the interpretation of [Bylaw §] 9.12 applied by Defendant Butler, regardless of its origins, cannot be justified in the circumstances of this case, and therefore constitutes a breach of fiduciary duty."  (Doc. 102 at 12.)  Thus, as Plaintiffs conceded at oral argument, this claim rises and falls with Claim Two, which alleged that Defendant Butler violated Local 469's Bylaws.  The Court agrees.  Because the Court finds that Defendant Butler did not violate Local 469's Bylaws, it logically follows that he did not breach his fiduciary duty.  *See Stelling*, 587 F.2d at 1389 ("When the union officials have offered a reasonable construction of the constitution, and no bad faith on their part has been shown, the courts should not disturb the union officials' interpretation.").

Therefore, the Court will grant summary judgment in Defendants' favor on Claim Four.

## IV.  CONCLUSION

Therefore,

**IT IS ORDERED** granting in part and denying in part Defendants' MSJ, (Doc. 73), and Plaintiffs' Amended MSJ, (Doc. 92), in accordance with this order.

**IT IS FURTHER ORDERED** denying Plaintiffs requests for injunctive relief.

(Doc. 1.)

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion to Strike, (Doc. 91), and Motion to Supplement, (Doc. 104).

**IT IS FURTHER ORDERED** that Defendants must produce the documents specified in this order, (*see supra* Section III.B.i.1.), within 30 days of this order's issuance.

**IT IS FURTHER ORDERED** instructing the Clerk to enter judgement in accordance with this order and terminate this case on August 11, 2022.

Dated this 6th day of July, 2022.

Honorable Susan M. Brnovich
United States District Judge